**IN THE UNITED STATES DISTRICT COURT**

**DISTRICT OF VERMONT**

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED
2020 AUG -7 PM 12: 07
CLERK
BY LAW
DEPUTY CLERK

TYLER BAKER, *on behalf of himself and all others similarly situated*,

Plaintiff,

v.

New Market Health Products, LLC, *a Limited Liability Company*,

Defendant.

Case No. 2:20-cv-116

**COMPLAINT - CLASS ACTION FOR VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT of 1991, 47 U.S.C. § 227**

## NATURE OF THIS ACTION

1. Plaintiff Tyler Baker ("Baker" or "Plaintiff"), individually and on behalf of the proposed Class defined below, brings this class action lawsuit against Defendant New Market Health Products, LLC ("New Market Health" or "Defendant") to enforce the consumer privacy provisions afforded by the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* (the "TCPA"), a federal law designed to curtail abusive telemarketing practices precisely like those described herein.

2. As detailed below, Defendant has violated 47 U.S.C. § 227(b)(1)(A)(iii) and 47 C.F.R. § 64.1200(a)(2) by using an automatic telephone dialing system ("ATDS") to bombard consumers' mobile phones with non-emergency advertising and marketing text messages without prior express written consent.

3. Plaintiff alleges as follows upon personal knowledge as to himself and his own experiences and, as to all other matters, upon information and belief including due investigation conducted by his attorneys.

## JURISDICTION AND VENUE

4. This Court has federal question subject matter jurisdiction over this class action lawsuit pursuant to 28 U.S.C. § 1331 as Plaintiff alleges violations of a federal statute, the TCPA.

5. This Court has personal jurisdiction over Defendant which engaged in a nationwide

telemarketing campaign, including in this District. Specifically, Plaintiff Baker, a Vermont resident, received text messages sent by Defendant that form the basis of his claims within this District.

6. Venue is proper in the United States District Court for the District of Vermont pursuant to 28 U.S.C. § 1391(b) and (c) because a substantial portion of the events alleged herein occurred within this District. Specifically, Plaintiff Baker received the text messages sent by Defendant that form the basis of his claims within this District.

**PARTIES**

7. Plaintiff Tyler Baker is an individual who, at all relevant times, resided in Underhill, Vermont.

8. Defendant New Market Health Products, LLC is a limited liability company organized under the laws of the State of Maryland with its principal place of business located at 16 West Madison Street in Baltimore, Maryland 21201.

9. According to its website (http://www.newmarkethealth.com/), New Market Health is a publishing and supplement company.

10. Defendant New Market Health Products markets a line of "nutritionals" and "nutritional supplements" under the BestHealth Nutritionals name. According to its website (https://www.besthealthnutritionals.com/nutritional-supplements-vitamins-formulas), BestHealth Nutritionals is dedicated to creating the highest quality nutritional supplements available on the market today.

11. New Market Health is, and at all times mentioned herein was, a "person," as defined by 47 U.S.C. § 153(39).

**TCPA BACKGROUND**

12. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry.

13. The TCPA was designed to prevent calls and text messages like the ones described herein, and to protect the privacy of citizens like Plaintiff. *See, e.g.*, *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012) ("Voluminous consumer complaints about abuses of telephone

technology – for example, computerized calls dispatched to private homes – prompted Congress to pass the TCPA.").

14. In enacting the TCPA, Congress intended to give consumers a choice as to how creditors and telemarketers may call them, and made specific findings that "[t]echnologies that might allow consumers to avoid receiving such calls are not universally available, are costly, are unlikely to be enforced, or place an inordinate burden on the consumer." TCPA, Pub.L. No. 102-243, § 11.

15. Toward this end, Congress found that:

> Banning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion.

*Id.* at § 12; *see also Martin v. Leading Edge Recovery Solutions, LLC*, 2012 WL 3292838, at *4 (N.D. Ill. Aug. 10, 2012) (citing Congressional finding on TCPA's purpose).

16. Congress also specifically found that "the evidence presented to the Congress indicates that automated or prerecorded calls are a nuisance and an invasion of privacy, regardless of the type of call […]." *Id.* at §§ 12-13; *see also Mims*, 132 S. Ct. at 744.

17. As Judge Easterbrook of the Seventh Circuit explained in a TCPA case regarding calls to a non-debtor similar to this one:

> The Telephone Consumer Protection Act […] is well known for its provisions limiting junk-fax transmissions. A less litigated part of the Act curtails the use of automated dialers and prerecorded messages to cell phones, whose subscribers often are billed by the minute as soon as the call is answered – and routing a call to voicemail counts as answering the call. An automated call to a landline phone can be an annoyance; an automated call to a cell phone adds expense to annoyance.

*Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 638 (7th Cir. 2012).

18. The TCPA makes it "unlawful for any person within the United States . . . to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice

. . . to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call . . . ." 47 U.S.C. § 227(b)(1)(A)(iii).

19. Text messages are calls and are subject to the TCPA. *See, e.g.*, *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 666 (2016); *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009); *Gerrard v. Acara Sols. Inc.*, 18-CV-1041V(F), at *8 (W.D.N.Y. June 27, 2019) (stating that "in th[e Second] Circuit district courts have treated text messages as 'calls' within the meaning of the TCPA), *report and recommendation adopted*, 2017 WL 6542462 (E.D.N.Y. Dec. 21, 2017) (citing *Krady v. Eleven Salon Spa*, 2017 WL 6541443, at *3 (E.D.N.Y. July 28, 2017)).

20. 47 C.F.R. § 64.1200(a)(2) additionally states, with respect to advertisement and telemarketing calls—of which Defendant's text to Plaintiff is—that "[n]o person or entity may . . . [i]nitiate or cause to be initiated, any telephone call that includes or introduces an advertisement or constitutes telemarketing, using an automatic telephone dialing system or an artificial or prerecorded voice, to any of the lines or telephone numbers described in paragraphs (a)(1)(i) through (iii) of this section, other than a call made with the prior express written consent of the called party . . . ."

21. 47 C.F.R. § 64.1200(f)(8) defines "prior express written consent" as "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered."

22. To state a claim for a violation of the TCPA, a plaintiff must only show that he or she received a call made using an ATDS or featuring a prerecorded voice; consent is an affirmative defense to liability under the TCPA. *See, e.g.*, *Duran v. La Boom Disco, Inc.*, No. 19-600-cv, at *8 (2d Cir. Apr. 7, 2020) (stating that "[g]enerally, the TCPA prohibits the use of ATDSs to produce unwanted phone calls or text messages" and citing 47 U.S.C. § 227(b)(1) for the elements of a TCPA claim); *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1042 (9th Cir. 2012)

(finding Defendant "did not show a single instance where express consent was given before the call was placed.")

23. The TCPA provides for damages in the amount of $500 for each negligent violation and $1,500 for each knowing violation. *See* 47 U.S.C. § 227(b)(3); *Duran v. La Boom Disco, Inc.*, No. 19-600-cv, at *8 (2d Cir. Apr. 7, 2020) ("Individuals who receive ATDS-generated calls or text messages can sue the sender under the TCPA for at least $500 for each unwanted call or text—and perhaps more if the sender knowingly violates the statute.").

**FACTUAL ALLEGATIONS**

24. Plaintiff Tyler Baker is, and has been at all times relevant to this action, the regular and sole user of his cellular telephone number - (802) 238-XXXX.

25. On November 4, 2004, Plaintiff registered his cellular number with the National Do Not Call Registry.

26. On or about May 17, 2020, at approximately 6:51 a.m., Defendant sent an automated text message to Plaintiff Baker's cellular telephone number from the telephone number (855) 909-0982.

27. A true and correct copy of the May 17, 2020 unsolicited marketing text message sent by or on behalf of Defendant is reproduced below:

///

///

///

///

///

///

///

///

///

///

///




28. The link embedded in the text message (https://txt.vg/GagkEn) redirects recipients to Defendant's website (https://www.besthealthnutritionals.com/nutritional-supplements-vitamins-formulas), which sells and promotes products offered by Defendant.

29. Plaintiff did not give Defendant prior express written consent to send text messages to his cellular telephone numbers by using an automatic telephone dialing system.

30. Plaintiff and Defendant do not have an established business relationship.

31. The text messages Defendant sent to Plaintiff consisted of pre-written templates of impersonal text, and were identical to text messages Defendant sent to other consumers.

32. Upon information and good faith belief, the language in the messages were automatically generated and inputted into pre-written text templates without any actual human intervention in the drafting or sending of the messages; the same exact messages were sent to thousands of other consumers.

33. The telephone system Defendant used to send the message constitutes an ATDS as defined by 47 U.S.C. § 227(a)(1). *See, e.g., Duran v. La Boom Disco, Inc.*, No. 19-600-cv, at *8-

9 (2d Cir. Apr. 7, 2020) (stating that "[a]ccording to the TCPA, a dialing system qualifies as an ATDS if it [has] the capacity . . . to store or produce telephone numbers to be called, using a random or sequential number generator [and] it must have the capacity . . . to dial such numbers") (international quotations omitted).

34. Upon information and good faith belief, and in light of the nature and character of the text messages at issue—standardized, impersonal, and consistent in structure and format—the advertisement and marketing text messages at issue were sent by using "equipment which has the capacity—(1) to store numbers to be called or (2) to produce numbers to be called, using a random or sequential number generator—and to dial such numbers automatically (even if the system must be turned on or triggered by a person)." *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041, 1053 (9th Cir. 2018); *see also Duran v. La Boom Disco, Inc.*, No. 19-600-cv, at *18 (2d Cir. Apr. 7, 2020) ("The FCC's interpretation of the statute is consistent with our own, for only an interpretation that permits an ATDS to store numbers—no matter how produced—will also allow for the ATDS to dial from non-random, non-sequential "calling lists." As the FCC implied, it does not matter that the lists are produced by human-generators rather than mechanical number-generators. What matters is that the system can store those numbers and make calls using them.").

35. Upon information and belief, no human directed any single text message to Plaintiff's cellular telephone number.

36. In addition, upon information and belief the hardware and software combination utilized by Defendant has the capacity to store and dial sequentially generated numbers, randomly generated numbers or numbers from a database of numbers.

37. Defendant did not have Plaintiff's prior express consent to place automated text messages to Plaintiff on his cellular telephones.

38. Receipt of Defendant's unauthorized messages drained Plaintiff's phone batteries and caused Plaintiff additional electricity expenses and wear and tear on his phone and battery.

39. Further, Defendant failed to maintain any do not call policies and procedures and review the DNC registry prior to placing its repeated and unsolicited texts to Plaintiff's telephone number.

40. Defendant did not place the text message for an emergency purpose.

41. Through the aforementioned conduct, Defendant violated 47 U.S.C. § 227(b)(1)(A)(iii).

**STANDING**

42. Standing is proper under Article III of the Constitution of the United States of America because Plaintiff's claims state: (a) a valid injury in fact; (b) which is fairly traceable to the conduct of Defendant; and (c) is likely to be redressed by a favorable judicial decision. *See*, *Spokeo, Inc. v. Robins,* 136 S.Ct. 1540, 1547 (2016)*; Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

***The "Injury In Fact" Prong***

43. Plaintiff's injury in fact must be both "concrete" and "particularized" in order to satisfy the requirements of Article III of the Constitution, as articulated in *Spokeo. Spokeo*, 136 S.Ct. at 1547; *see also Mejia v. Time Warner Cable Inc.* , Nos. 15 Civ. 6445 & 15 Civ. 6518, 2017 WL 3278926, at *7 (S.D.N.Y. Aug. 1, 2017) (citing cases from the Second, Eighth and Eleventh Circuits).

44. For an injury to be "concrete" it must be a *de facto* injury, meaning that it actually exists. *See, e.g.*, *Soppet v. Enhanced Recovery Co.*, LLC, 679 F.3d 637, 638 (7th Cir. 2012); *Van Patten v. Vertical Fitness Grp., LLC* , 847 F.3d 1037, 1043 (9th Cir. 2017) (holding that TCPA violations cause "a concrete injury in fact sufficient to confer Article III standing" because "[u]nsolicited telemarketing phone calls or text messages, by their nature, invade the privacy and disturb the solitude of their recipients").

45. In this case, Defendant sent text messages to Plaintiff's cellular telephone, using an ATDS. Such text messages are a nuisance, an invasion of privacy, and an expense to Plaintiff. All three of these injuries are concrete and de facto. *See, e.g.*, *Yaakov v. Educ. Testing Serv.*, 367 F. Supp. 3d 93, 108 (S.D.N.Y. 2019) ("Read together, *Spokeo* and *Strubel* reaffirm the long-standing principle that Congress can recognize new interests—either tangible or intangible—through legislation and confer private rights of action to protect those interests.") (citation omitted).

46. For an injury to be "particularized" means that the injury must "affect the Plaintiff in a personal and individual way." *Spokeo, Inc.*, 136 S.Ct. at 1543; *see also Melito v. Am. Eagle Outfitters, Inc.* , No. 14-CV-2440, 2017 WL 3995619, *4–5 (S.D.N.Y. Sept. 11, 2017) (holding that receipt of prerecorded voicemail was sufficient concrete injury to give plaintiff standing), *appeal filed* , No. 17-3277 (2d Cir. 2017); *Owens v. Starion Energy, Inc.*, No. 16-CV-192, 2017 WL 2838075, at *1 n.1 (D. Conn. June 30, 2017) (holding that receipt of telemarketing call caused sufficient concrete injury under Article III to confer standing).

47. In this case, Defendant invaded Plaintiff's privacy and peace by texting his cellular telephone, and did this with the use of an ATDS, despite Plaintiff's registering his telephone number with the National Do Not Call Registry. Furthermore, Plaintiff was distracted and annoyed by having to take time, opening and reading the text messages.

48. All of these injuries are particularized and specific to Plaintiff, and will be the same injuries suffered by each member of the putative class.

***The "Traceable to the Conduct of Defendant" Prong***

49. The second prong required to establish standing at the pleadings phase is that Plaintiff must allege facts to show that its injuries are traceable to the conduct of Defendant.

50. The above text messages were directly and explicitly linked to Defendant.

51. The link embedded in the unsolicited text messages sent to Plaintiff (https://txt.vg/GagkEn) redirects the recipient to the website (https://www.besthealthnutritionals.com/nutritional-supplements-vitamins-formulas), which sells and promotes Defendant's products.

52. The text messages are the sole source of Plaintiff's and the Class's injuries. Therefore, Plaintiff has alleged facts that show that their injuries are traceable to the conduct of Defendant.

///

***The "Injury is Likely to be Redressed by a Favorable Judicial Opinion" Prong***

53. The third prong to establish standing at the pleadings phase requires Plaintiff to allege facts to show that the injury is likely to be redressed by a favorable judicial opinion.

54. In the present case, Plaintiff's Prayers for Relief include a request for damages for each text message made by Defendant, as authorized by statute in 47 U.S.C. § 227. The statutory damages were set by Congress and specifically redress the financial damages suffered by Plaintiff and the members of the putative class.

55. Because all standing requirements of Article III of the U.S. Constitution have been met, Plaintiff has standing to sue Defendant on the stated claims.

**CLASS ACTION ALLEGATIONS**

56. Plaintiff brings this action under Federal Rule of Civil Procedure 23, and as representatives of the following class:

> **ATDS Class**:
>
> All persons throughout the United States (1) to whom Defendant delivered, or caused to be delivered, a text message, (2) directed to a number assigned to a cellular telephone service, (3) by using an automatic telephone dialing system, (4) within four years preceding the date of this complaint through the date of class certification.
>
> **DNC Class**:
>
> All persons within the United States who, within the four years prior to the filing of this Complaint, received more than one text message to their cellular telephone numbers within any 12-month period by or on behalf of the same entity, without their prior express consent, while listed on the National Do Not Call Registry.

57. Excluded from the class are Defendant, its officers and directors, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendant have or had a controlling interest.

58. Plaintiff reserves the right to redefine the class and to add subclasses as appropriate based on discovery and specific theories of liability.

59. **Numerosity:** Upon information and belief, the members of the class are so numerous that joinder of all of them is impracticable.

60. The exact number of the members of the class is unknown to Plaintiff at this time, and can (and will) be determined through appropriate discovery. However, given that, on information and good faith belief, Defendant texted thousands of class members nationwide during the class period, it is reasonable to presume that the members of the Class are so numerous that

joinder of all members is impracticable. The disposition of the claims in a class action will provide substantial benefits to the parties and the Court.

61. **Ascertainability:** The members of the class are ascertainable because the class is defined by reference to objective criteria.

62. In addition, the members of the class are identifiable in that, upon information and belief, their cellular telephone numbers, names and addresses can be identified in business records maintained by Defendant and by third parties.

63. **Typicality:** Plaintiff's claims are typical of the claims of the members of the class. Plaintiff has had to suffer the burden of receiving text messages to his cellular telephone from an ATDS. Thus, their injuries are typical to Class Members. As they did for all members of the class, Defendant used an ATDS to deliver text messages to Plaintiff's cellular telephone number.

64. Plaintiff's claims, and the claims of the members of the class, originate from the same conduct, practice and procedure on the part of Defendant.

65. Plaintiff's claims are based on the same theories, as are the claims of the members of the class.

66. Plaintiff and Class Members were harmed by the acts of Defendant in at least the following ways: Defendant harassed Plaintiff and Class Members by illegally texting their cellular phones using an ATDS. Plaintiff and the class were damaged thereby.

67. **Adequacy:** Plaintiff is qualified to, and will fairly and adequately protect the interests of the members of the class with whom they are similarly situated, as demonstrated herein. Plaintiff acknowledges that they have an obligation to make known to the Court any relationships, conflicts, or differences with any Class Member.

68. Plaintiff's interests in this matter are not directly or irrevocably antagonistic to the interests of the members of the class.

69. Plaintiff will vigorously pursue the claims of the members of the class.

70. Plaintiff has retained counsel experienced and competent in class action litigation. Plaintiff's attorneys, the proposed class counsel, are versed in the rules governing class action discovery, certification, and settlement. In addition, the proposed class counsel is experienced in

handling clams involving consumer actions and violations of the TCPA.

71. Plaintiff's counsel will vigorously pursue this matter.

72. Plaintiff's counsel will assert, protect and represent the members of the class.

73. Plaintiff has incurred, and throughout the duration of this action, will continue to incur costs and attorneys' fees that have been, are, and will be, necessarily expended for the prosecution of this action for the substantial benefit of each Class Member.

74. **Predominance:** The questions of law and fact common to the members of the class predominate over questions that may affect individual members of the class. The elements of the legal claims brought by Plaintiff and Class Members are capable of proof at trial through evidence that is common to the Class rather than individual to its members.

75. **Commonality:** There are common questions of law and fact as to all members of the Class, including but not limited to the following:

a. What is Defendant's conduct, pattern, and practice as it pertains to delivering advertisement and telemarketing text messages;

b. Whether Defendant sent text messages to telephone numbers listed on the Do Not Call Registry.

c. Whether, within the statutory period, Defendant used an ATDS as defined by the TCPA to send text messages to Class Members;

d. Whether Defendant's conduct violated the TCPA;

e. Whether Defendant should be enjoined from engaging in such conduct in the future; and

f. The availability of statutory penalties.

76. **Superiority:** A class action is superior to all other available methods for the fair and efficient adjudication of this matter because:

- If brought and prosecuted individually, the claims of the members of the class would require proof of the same material and substantive facts.
- The pursuit of separate actions by individual members of the class

would, as a practical matter, be dispositive of the interests of other members of the class, and could substantially impair or impede their ability to protect their interests.

- The pursuit of separate actions by individual members of the class could create a risk of inconsistent or varying adjudications, which might establish incompatible standards of conduct for Defendant.
- These varying adjudications and incompatible standards of conduct, in connection with presentation of the same essential facts, proof, and legal theories, could also create and allow the existence of inconsistent and incompatible rights within the class.
- The damages suffered by each individual member of the class may be relatively modest, thus, the expense and burden to litigate each of their claims individually make it difficult for the members of the class to redress the wrongs done to them.
- Absent a class action, most Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law.
- The pursuit of Plaintiff's claims, and the claims of the members of the class, in one forum will achieve efficiency and promote judicial economy.
- There will be little difficulty in the management of this action as a class action.

77. Defendant has acted or refused to act on grounds generally applicable to the members of the class, making final declaratory or injunctive relief appropriate.

78. Plaintiff and the Class Members have all suffered and will continue to suffer harm and damages as a result of Defendant's unlawful conduct.

79. This suit seeks only damages and injunctive relief for recovery of economic injury on behalf of Class Members and it expressly is not intended to request any recovery for personal

injury and claims related thereto.

**COUNT I**

**Violations of the Telephone Consumer Protection Act**

**47 U.S.C. § 227(b)(1)(A)(iii)**

**(On behalf of Plaintiff and the TCPA Class)**

80. Plaintiff incorporates herein all preceding factual allegations.

81. Defendant and/or its agents placed unsolicited text messages to Plaintiff's cellular telephone and the cellular telephones of the other members of the Class using an ATDS.

82. Defendant placed these text messages *en masse* without the consent of Plaintiff and the other members of the Class.

83. Defendant's conduct was negligent, or willful or knowing.

84. Defendant has, therefore, violated 47 U.S.C. § 227(b)(1). As a result of Defendant's conduct, Plaintiff and the other members of the Class are each entitled to a minimum of $500 in damages, and up to $1,500 in damages, for each violation.

85. Plaintiff and members of the putative class are also entitled to and do seek injunctive relief prohibiting Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf from violating the TCPA, 47 U.S.C. § 227, by sending texts, except for emergency purposes, to any cellular telephone numbers using an ATDS in the future.

86. Defendant violated 47 U.S.C. § 227(b)(1)(A)(iii) and 47 C.F.R. § 64.1200(a)(2) by utilizing an ATDS to make advertising and marketing texts to Plaintiff's cellular telephone numbers without prior express written consent.

87. As a result of Defendant's violations of 47 U.S.C. § 227(b)(1)(A)(iii) and 47 C.F.R. § 64.1200(a)(2), Plaintiff, and the members of the class, are entitled to damages in an amount to be proven at trial.

**COUNT II**

**47 U.S.C. § 227(c) (Do Not Call Registry)**

88. Plaintiff re-alleges and incorporates the above paragraphs as if fully set forth herein.

89. Plaintiff and members of the DNC Class received more than one marketing text

message within a 21-month period, by or on behalf of Defendant, for the express purpose of marketing Defendant's goods and/or services without their written prior express consent.

90. Defendant's call caused Plaintiff and members of the DNC Class actual harms including, but not limited to, invasion of their personal privacy, aggravation, nuisance and disruption in their daily lives, reduction in cellular telephone battery life, data, and loss of use of their cellular telephones.

91. As a result of the aforementioned violations of the TCPA, Plaintiff and the DNC Class are entitled to an award of up to $1,500 for each call or text message in violation of the TCPA pursuant to 47 U.S.C. § 227(c)(5).

92. Additionally, Plaintiff and members of the DNC Class are entitled to and seek injunctive relief prohibiting such future contact.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

a) Determining that this action is a proper class action;

b) Designating Plaintiff as a class representative under Federal Rule of Civil Procedure 23;

c) Designating Plaintiff's counsel as class counsel under Federal Rule of Civil Procedure 23;

d) Adjudging and declaring that Defendant violated 47 U.S.C. § 227(b)(1)(A)(iii);

e) Enjoining Defendant from continuing its violative behavior, including continuing to deliver text messages to Plaintiff's cellular telephone number, and to the cellular telephone numbers of the members of the class, without prior express written consent;

f) Awarding Plaintiff and the members of the class damages under 47 U.S.C. § 227(b)(3)(B) in the amount of $500.00 per unlawful text message to Plaintiff, and each class member;

g) Awarding Plaintiff and the members of the class treble damages under 47 U.S.C. § 227(b)(3)(C);

h) Awarding Plaintiff and the members of the class damages under 47 U.S.C. § 227(c)(5)(B);

i) Awarding Plaintiff and the class reasonable attorneys' fees, costs, and expenses under Rule 23 of the Federal Rules of Civil Procedure;

j) Awarding Plaintiff and the members of the class any pre-judgment and post-judgment interest as may be allowed under the law; and

k) Awarding such other and further relief as the Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all triable issues.

Dated: August 4, 2020

Respectfully submitted,

William Pettersen, Esq.
Pettersen Law PLLC
1084 East Lakeshore Dr.
Colchester, VT 05446
(802) 477-2780
pettersenlaw@gmail.com

Kazerouni Law Group, APC
Abbas Kazerounian, Esq. (*pro hac vice admission to be sought*)
245 Fischer Avenue, Unit D1
Costa Mesa, CA 92626
(800) 400-6808

Kazerouni Law Group, APC
Yana A. Hart, Esq. (*pro hac vice admission to be sought*)
2221 Camino Del Rio, Suite 101
San Diego, CA 92108
(619) 233-7770

*Counsel for Plaintiff & the Putative Class*